# Sheperd *against* Jones.

Parties to an agreement having clearly and plainly stipulated for the sale and purchase of an equitable title, the court will not permit that agreement to be perverted by an endorsement upon it, stipulating for a different kind of title, unless it is made to appear very clearly that such was the intention of the parties.

ERROR to the district court of *Allegheny* county.

John Jones against John Sheperd.  This was an action of covenant.  It appeared that Jones had purchased a certain lot in Pittsburg from Alexander Laughlin, and before he had completed his title by the payment of the whole purchase-money, he entered into the following agreement with the defendant John Sheperd, upon which this suit is brought:—

"Articles of agreement made the 8th day of April 1836, by and between John Jones of Bayardstown, bricklayer, and John Sheperd, of Pittsburg, saddler:  Witnesseth that the said John Jones hath this day sold to the said John Sheperd his lot in Bayardstown aforesaid, fronting on the extension of Penn street twenty-four feet, and extending back one hundred feet to a twenty feet alley, upon which is erected a brick house and other improvements thereon, which said lot is especially described and set forth in the written article of agreement dated the 1st of April 1826, for the sale of the said lot by Alexander Laughlin to the said John Jones, and which said article is hereby assigned and transferred to the said John Sheperd by the said John Jones, together with the

[Jones v. Sheperd.]

covenants and agreements therein contained, so that a deed may be made to the said Sheperd by the said Laughlin upon payment of the purchase-money. In consideration of which said bargain and sale the said John Sheperd agrees to pay to the said John Jones the sum of one thousand dollars in hand, and the further sum of six hundred dollars in three years, in two hundred dollars in each year, with interest on the same after one year from date until paid up. In witness whereof the said parties have hereunto set their hands and seals the day and year above written.

" Witnesses present,            John Jones.    [L. S.]
      " Geo. Watson,             John Sheperd.  [L. S.]"
      " Jas. McElroy.

On this agreement the following was written:—

" Memorandum of an agreement made and agreed on this 28th day of April 1836.

" Now the condition of this article is such, this being the 28th day of April 1836, John Jones delivers up possession of his lot and houses to John Sheperd, and on the 1st day of May 1836, said Sheperd from and after that date to receive all rents, issues, and profits arising from said lot and houses, and said Jones has the benefit of collecting all rents and arrearages up to the first of May as above stated. And said John Sheperd agrees, that as soon as said Jones can present him with a deed in full, free from all incumbrance from Alexander Laughlin and others, he, the said John Sheperd, agrees to pay the balance of one thousand dollars, which was agreed to be the first payment on said premises. In testimony of the above we have hereunto set our hands the day and year above written.

" In presence of               John Jones,
      " Robt. Glass.            John Sheperd."

On the subject of this last agreement, Robert Glass, the subscribing witness, testified as follows:—

" Robert Glass again.—Jones and Sheperd both called on me to make the memorandum of 28th of April—it was drawn in my office—I considered Jones sober—do not know where they came from.

" The interlineation was made the same day in presence of them both—cannot say whether it was after the paper was signed or not —it was executed in the fore part of the day—not so positive.

" I went round with them before the memorandum was drawn —I saw him deliver possession—after it was done they came to my office and I drew—both parties told me to write it to keep it in remembrance—they wanted to have a memorandum of it so that they should not forget it—the matter about his not paying the 1000 dollars till the deed was made was put in by my suggestion—the agreement was read and both parties were present.

" Did not see Jones drink any till after possession was delivered.

" I considered him perfectly sober when the article was signed.

" They told me nothing of what was to be put in that—I drew

VIII.—2 s

[Jones v. Sheperd.]

it in my own way—only they told me to draw a memorandum to keep it in remembrance—they told me nothing of what I should put in it—I drew it this way of my own accord.

" While we were in the houses the arrangement was made that Jones should have the rents till the first of May.

" Neither of them requested me to make the interlineation, or put any thing in on that subject—I saw it was wanting and did it myself —I never had seen Laughlin's article, or Sheperd and Jones's— only that I understood from them that the first payment was to be 1000 dollars—Sheperd paid nothing to Jones for abandoning the first article—nothing said about the article—not a word.

" Sometimes Jones would be sober for a week or two—when in that way his intellect was as good as ever—they drank a bottle of porter at my house after the memorandum was signed."

The court below (Grier, president) was of opinion, that there was some roguery about the execution of the agreement of the 28th of April 1836, and having submitted the facts of the case to the jury, instructed them, that if they thought so, then the plain interpreta- tion of the agreement and intention of the parties was, that the plaintiff agreed to sell his equitable title for 1600 dollars, and if so, they should find for the plaintiff.   Verdict accordingly for the plaintiff.

*Mahon*, for plaintiff in error.
*M'Candless*, for defendant in error.

The opinion of the Court was delivered by

Rogers, J.—There is too much reason to believe that the memo- randum of the 28th of April, is the result of a concerted plan to alter the original agreement.   There is something very extraordi- nary, to say the least of it, in the conduct of Glass.   According to his own statement, he was called on by the parties, merely to make a memorandum of the bargain relative to the delivery of the pos- session.   This he converts into a distinct contract between the parties; and without any instruction from either of them, introduces a stipulation totally at war with the agreement, by which Sheperd is exempted from the payment of the hand money, until Jones " can present him with the deed in full, free from all incum- brances."   As an agreement this is void, because without consi- deration; nor can it, under the circumstances, weigh a feather in the construction of the original agreement.   For there can be but little doubt that it arose from a contrivance between the witness and the vendee, suggested, as is most probable, by the defendant himself.   The case, therefore, depends on the construction of the agreement of the 8th of April.   Laughlin was the owner of the legal title, and Jones of the equitable title, with the right to call for the conveyance of the legal title, upon payment of about 300 dollars, the residue of the purchase-money.   All that Jones had to

[Jones v. Sheperd.]

sell was his incumbered equitable estate, and we are not to suppose that he intended to sell more than he had, or that Sheperd intended to purchase more, unless their intention appears otherwise in the face of the agreement itself. Thus, in Anwerter *v.* Mathiot, 9 *Serg. & Rawle* 397, it is ruled, " That the judgment creditors of the vendee of land, who has paid part of the purchase-money, and has possession of the land, but has received no deed, are entitled to the proceeds of sale of his title, under an execution, in preference to the vendor." It is there held, that the vendee of the sheriff takes the place of the equitable owner, and before he can call for the legal title, he must pay the amount of the purchase-money remaining unpaid; or, in other words, that he acquires no further nor greater interest than the equitable owner. This being the legal construction of a judicial sale, no good reason can be given why the same principle should not be applied to a private sale, except so far as it appears to be altered by the contract. If the vendee wishes to avoid this legal inference, it is necessary for him to guard against it by apt stipulations. But throwing out of view the extraneous matter which has been pressed into this cause, and which the district court properly disregarded, what was the intention of the parties to this contract to be collected from the instrument itself? Jones assigns to Sheperd all his interest in the premises, and this, we have seen, is an equitable interest, subject to the payment of the residue of the purchase-money to the owner of the legal title. The assignment is made on the back of the agreement, between Jones and Laughlin, and the agreement is transferred to Sheperd, together with the covenants and agreements therein contained, so that a deed may be made to the said Sheperd by the said Laughlin, upon payment of the purchase-money. But who was to be answerable for the payment of the purchase-money? The inference is irresistible, that the owner of the equitable estate, viz. Sheperd, to whom Laughlin was to give the deed, was to pay it. It is a legal inference, only to be controverted by something in the agreement indicative of a contrary intention. And this construction is strengthened by what follows. In consideration of which said *bargain and sale,* that is, the transfer of Jones's equitable interest, subject as aforesaid, " Sheperd agrees to pay to Jones the sum of one thousand dollars in hand, and the further sum of six hundred dollars in three years—two hundred dollars in each year, with interest on the same, after one year from date, until paid." There cannot be a reasonable doubt, that the parties at the time understood that Sheperd was to take the place of Jones, and in consideration of the transfer as aforesaid, was to pay the sum of sixteen hundred dollars in hand, and without any deduction whatever. And Sheperd himself, and his legal adviser, must have so understood the bargain; for, unless this was the plain import of the agreement, why resort to the disingenuous and fraudulent method of altering the

agreement, by foisting into the memorandum, made for a different purpose, a stipulation entirely at variance with the original article.

Judgment affirmed.