## George Schempp, Sr., to use of Oliver McClintock & Co. *v.* Henry C. Fry, Appellant.

*Attachment execution—Duty of garnishee—Negligence—Judgment—Suit on bond—Evidence.*

A garnishee in an attachment execution must, in good faith to the owner, contest every inch of the ground, or he will not be discharged from liability for the debt.

In an attachment execution, a person other than the defendant in the execution, claimed to own the goods. The garnishee took from the claimant a bond conditioned to save the garnishee harmless from the attachment, sold the goods, retained his own charges and counsel fee, and delivered the balance to the claimant. Subsequently the attachment came on for trial. The garnishee did not notify claimant, although he knew where he was. The garnishee also knew the witnesses who could prove the true ownership of the property, and that they were within reach, but he did not summon them. An irregular money verdict was entered against the garnishee, who permitted it to stand, and allowed judgment to be entered upon it. *Held*, that the garnishee was grossly negligent of the duty he owed to the claimant, and that neither he nor the plaintiffs in the execution could use the judgment against the garnishee as evidence of a right to recover on the bond

Argued Oct. 30, 1894. Appeal, No. 187, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co.,

July T., 1893, No. 210, on verdict for plaintiff. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on garnishee's bond. Before EWING, P. J.
The facts appear by the opinion of the Supreme Court.

*E. G. Ferguson*, *J. S. Ferguson* with him, for appellant, cited: Morrison's Admr. v. Mullin, 34 Pa. 12; Megee v. Beirne, 39 Pa. 50; Rothermell v. Marr, 98 Pa. 285; Lennig's Ap., 9 W. N. 503; Hall v. Manf. Co., 10 Phila. 370; Gregg v. Hilson, 8 Phila. 91.

*W. K. Jennings*, for appellees, cited: Armstrong v. Lancaster, 5 Watts, 68; Hamilton v. Brown, 18 Pa. 87; Berks Co. v. Levan, 86 Pa. 360; Phila. v. Lockhardt, 73 Pa. 211.

OPINION BY MR. JUSTICE DEAN, Jan. 7, 1895:

In the year 1889, A. F. A. Brown and Margaret C. Brown, his wife, occupied a house in Allegheny City. The furniture in the house was the separate property of the wife. In the latter part of 1889, being about to remove to New York, Mrs. Brown employed Schempp, the plaintiff, to pack and ship her furniture. To do this he hauled it to his warehouse in Pittsburg, where it remained for more than a year. While it was in the warehouse, on the 31st of July, 1890, the wife sold it to Henry C. Fry, defendant, by regular transfer and bill of sale, and Fry notified Schempp.

Brown, the husband, on the 22d of September, 1890, confessed a judgment to McClintock & Co. for $288.75, and they, on same day, issued an attachment execution, levied on the furniture, and summoned Schempp as garnishee. Schempp claimed a lien on the furniture for the storage and packing, which was conceded by Fry, and on the 3d of December, 1890, they by writing agreed that Schempp should sell certain particular articles of it, deduct his own bill, pay $100 to W. A. Boothe, Esq., his attorney in the attachment proceedings, and the balance, if any, to Fry. That part of the furniture not agreed to be sold was delivered to Fry. At the same time Fry, by his agent for that purpose, one Moore, delivered to Schempp a bond conditioned to indemnify him, amongst other things, against the

McClintock & Co. attachment. Afterwards interrogatories to Schempp were filed in the attachment proceedings. He answered, on June 25th, 1891, in substance, that, at the service of the attachment, he had not in his possession any money or goods of Brown, the husband, but that he did have goods, at that time, the property of Mrs. Brown. He did not mention the subsequent transfer by Mrs. Brown to Fry, the defendant.

The issue on the McClintock attachment was reached for trial October 25th, 1892, and the jury rendered a verdict for plaintiff for $326.42. No one was present representing Fry ; Schempp had given them no notice of the trial ; the evening before the trial he had notified Moore, who had been the agent of Fry when a portion of the goods had been appropriated to the payment of his liens and counsel fees, but nearly a year before, Fry had notified him of the revocation of Moore's agency. Judgment having been entered on the verdict, and an execution returned "no goods," as against Schempp, Mr. Boothe, his attorney, delivered the indemnity bond to McClintock & Co., the attaching creditors, who at once brought suit upon it against Fry.

On the trial in the court below, two questions were submitted to the jury: 1. Did Schempp perform his duty as garnishee, by giving reasonable notice to the owner to defend ? 2. Were the goods the separate estate of the wife, Mrs. Brown ?

The verdict was for plaintiffs, and from the judgment the defendant, Fry, appeals, preferring five assignments of error, all of which, in the view we take of the case, may be disposed of by the determination of the fifth: "That under all the evidence and the pleadings in the case, plaintiffs cannot recover."

The case turns on the effect to be given the judgment of McClintock & Co. against Schempp, the garnishee. That judgment was conclusive as to the parties and their privies. Assuming, without so deciding, that Fry, because of his interest in the subject of the suit, could not controvert the conclusiveness of the judgment, as against Schempp, the question would still remain : Is he, in view of the evidence, answerable to the garnishee in a personal action on the bond of indemnity, merely because of that judgment? What would have been the situation of this garnishee if no bond had been delivered him ?

In Baldy v. Baldy, 15 Pa. 103, the two parties interested in the fund, although not parties to the attachment, by leave of court were put upon the record with the garnishee. This court says: "But Baldy, the garnishee, was bound to make every just and legal defence which he could make, or be answerable to them for the fund." In Stoner v. Com., 16 Pa. 387, an attachment execution was issued and served on the garnishee, Stoner, on a judgment against one Simon Lingle, for money alleged to be coming to Lingle on a distributive share of a recognizance in the orphans' court. The garnishee admitted there was in his hands, belonging to the defendant in the attachment, $190; and believing him to be insolvent, to avoid litigation and costs, paid the money to the attaching creditor. It appeared that, before this, Simon Lingle's share in the recognizance had passed to one Thomas S. Lingle, who more than a year afterwards brought suit against the garnishee on the recognizance for the money. Among other defences, he pleaded the attachment execution and payment as a bar to recovery. This court held: "The key of the case is, that Simon Lingle . . . . never was the owner of the money secured by the recognizance. The defendant's payment of his debt could not . . . . be pleaded in bar as payment of the recognizance in the character of a garnishee—as the latter, certainly not, for he was bound to contest every inch of the ground, and payment before judgment against him could be no defence to a suit on the attached security." We cite these cases for purpose of showing what duty the garnishee owes to the owner of the property, where the latter institutes suit against the garnishee after judgment, or after payment without judgment. He must, in good faith to the owner, contest every inch of ground, or he will not be discharged from liability for the debt.

Were the legal relations of the garnishee to the owner in any way modified or changed by the special circumstances in this case? The attachment had been served; the owner, Fry, then gave the bond, which, so far as relates to this case, stipulates: Whereas, a writ of execution attachment has issued, " of which said George Schempp has been summoned as garnishee, and whereas Henry C. Fry claims to be the owner of said property, and that said attachments are no lien thereon, and has requested said Schempp to sell and dispose of a portion of said

property, and deliver him the balance, to which said Schempp
has consented: Now the condition of this obligation is, that if
the obligor . . . . shall at all times hereafter indemnify and
save harmless the said George Schempp . . . . from and against
any and all loss, costs, damages and expenses, which may accrue
to him . . . . by reason of the sale of said property, and the
paying over of the proceeds thereof to the said Henry C. Fry
. . . . by reason of the several writs of attachment hereinbefore
recorded, then this obligation to be void."

Contemporaneous with the delivery of the bond, it was agreed
that Schempp should sell certain articles of the goods, and out
of the proceeds pay his liens for costs and charges, and also a fee
of $100 to his attorney, Mr. Boothe, in the attachment cases.
Schempp, within two days, sold $700 worth of the goods, kept
$600 for his own charges and paid the other $100 to his attor-
ney; the balance was delivered to the owner; the attachment
was left pending to be tried as contemplated by both parties.
We do not see that the responsibility of Schempp the garnishee
was diminished by this agreement; not only did his full duty
as garnishee remain as the law implied, but by a special agree-
ment he was paid in full his own demand, and provision made
for his own defence of the suit on the attachment to which Fry
was of record no party.  He was bound, as is said in Stoner v.
Com., supra, "to contest every inch of the ground," in favor
of the owner, especially after the owner had paid him counsel
fee and indemnified him.

Did he do this?  The owner was not notified that the cause
was at issue and on the trial list.  The counsel for the garnishee,
at 4 o'clock in the afternoon of the 24th of October, notified
Moore, who had been agent for Fry, that the cause would be
called for trial the next day; but the agency of Moore had been
revoked a year before; the counsel for Fry had an office across
the street from Mr. Boothe but notice was not given them;
Fry himself lived at Rochester, Pa.  He was not notified by
telegraph or otherwise; the witnesses who could have proven
an absolute title in Fry, were not subpœnaed or present.  The
case was tried, and, on the presumption that personal property
claimed by the wife belongs to the husband when there is no
affirmative proof to the contrary, the verdict was for the plain-
tiff against Schempp for $326.42.

This was a fatally irregular verdict, and would doubtless have been set aside by the court on motion of the garnishee. The jury, under the act of assembly of 1836 and the settled practice, should have found what goods were in his hands, and their value, and that plaintiff should have execution as to so much as would satisfy his demand. But the garnishee permitted this irregular verdict to stand, and judgment to be entered. His attorney then, after a return of "no goods" on an execution, handed over the bond to McClintock & Co. who brought suit upon it in the garnishee's name for their use.

It is not necessary to inquire whether notice to Fry, that the suit was on the list for trial, would have relieved the garnishee from the duty of preparing for trial; he made no preparation, and gave no notice. He knew the witnesses who could prove the true ownership of the property, and that they were within reach. To a question from the court as to why these witnesses were not produced, or notice given the owner, the attorney of the garnishee answered: "I supposed that Mr. Fry's attorneys would take an interest in the matter, and would look after it." This was the garnishee's measure of the duty owing from him to the owner, in whose custody had been placed valuable property, and who had paid him $700 in cash as compensation. We do not think it comes up to the measure laid down by this court in Baldy v. Baldy, supra, that: "The garnishee is bound to make every just and legal defence which other parties interested in the fund in his hands could make, or he will be answerable to them therefor." The garnishee was grossly neglectful of the duty he owed to the owner, in permitting a verdict practically by default, to be taken against him on the attachment, and for that reason he cannot use that judgment as evidence of a right to recover on the bond. The use plaintiffs have no better right than the legal plaintiffs. The court, on this undisputed evidence, submitted to the jury to find whether the garnishee had performed his duty. The plaintiff's own witnesses proved that he had not, and there was nothing for the jury to consider.

The judgment is reversed.